UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
-----------------------------------------------------------------X
JEREMY ANDERSON, :
*on behalf of himself individually and all others* : Case No: 16-cv-_____
*similarly situated,* :
                Plaintiff, : **COMPLAINT**
: **AND JURY DEMAND**
        -against- :
:
P.F. CHANG'S CHINA BISTRO, INC., :
and JOHN DOES #1-10, :
:
              Defendants. :
-----------------------------------------------------------------X

      Plaintiff, Jeremy Anderson ("Anderson" or "Plaintiff"), on behalf of himself individually and all others similarly situated, by and through his undersigned attorneys, complains and alleges for his Complaint against Defendants P.F. Chang's China Bistro Inc. ("P.F. Chang's") and John Does #1-10 (collectively "Defendant" or "Defendants" or "PF Chang's") as follows:

## NATURE OF THE ACTION

      1.     This is a case in which Plaintiff worked numerous hours as a sous chef employee for Defendants and was not paid his legal minimum wages and/or overtime wages by Defendants.

      2.     Plaintiff alleges on behalf of himself individually and all other similarly situated current and former employees of Defendants, who elect to opt into this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), that they are: (i) entitled to unpaid wages from Defendants for work for which they did not receive minimum wages and/or for overtime work for which they were not paid time and one-half their regular hourly wage rate, and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq*.

      3.     Plaintiff further complains on behalf of himself individually and all other similarly situated current and former employees that they are entitled to backwages from Defendants for work performed for which they were not paid legal wages including minimum wages and

including overtime wages at the rate of time and one-half their regular hourly wage rate, as required by the Michigan Labor Law and North Carolina Labor Law. *See* Workforce Opportunity Wage Act, Public Act 138 of 2014 ("WOWA"), Mich. Comp. Laws § 408.411 *et seq.* (Minimum Wage and Overtime Statute); North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1 *et seq.* ("NCWHA").

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337 and 1343, and it has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) in that Plaintiff was employed by Defendants in this district and a substantial part of the events or omissions giving rise to the claim occurred in this district.

6. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

7. Anderson is an adult individual residing in Florida.

8. Upon information and belief, Defendant P.F. Chang's (the "Corporate Defendant" or "P.F. Chang's" or "PF Chang's") is a Delaware corporation organized and existing under the laws of the state of Delaware with its corporate headquarters located at 7676 E. Pinnacle Peak Road, Scottsdale, Arizona 85255.

9. P.F. Chang's is an Asian-themed United States casual dining restaurant chain owned and operated by Centerbridge Partners and headquartered in Scottsdale, Arizona. As of

2

October 2014, P.F. Chang's operated 204 restaurants in the United States and 56 in international markets under licensee agreements. PF Chang's is the largest full service, casual dining Chinese restaurant chain in the United States with locations across the country. P.F. Chang's has locations in Canada, Puerto Rico, Mexico, Argentina, Chile, Brazil, Colombia, Costa Rica, Panama, Turkey, Lebanon, Philippines and the Middle East.

10. Upon information and belief, John Does #1-10 represent the entities doing business as the Corporate Defendant and are the owners, officers, directors and/or managing agents of the Corporate Defendant, who acted intentionally and maliciously and are "employers" pursuant to the FLSA, 29 U.S.C. § 203(d) and the regulations promulgated thereunder, 29 C.F.R. § 791.2, and are jointly and severally liable with the Corporate Defendant.

## COLLECTIVE ACTION ALLEGATIONS

11. Pursuant to 29 U.S.C. § 207, Plaintiff seeks to prosecute his FLSA claims as a collective action on behalf of all persons who are or were formerly employed by Defendants as sous chef employees or similar positions with different titles, who were non-exempt employees within the meaning of the FLSA and who were not paid minimum wage for hours worked and/or were not paid overtime for hours worked over 40 hours in a workweek (the "Collective Action Members") during the period 3 years prior to the filing of this case to the present.

12. Plaintiff will fairly and adequately protect the interests of the Collective Action Members and has retained counsel that is experienced and competent in the fields of employment law and collective action litigation. Plaintiff has no interests that are contrary to or in conflict with the members of this collective action.

13. A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore,

inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

  14. Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiffs and other Collective Action Members are:

  a. whether the Defendants employed the Collective Action Members within the meaning of the FLSA;

  b. whether the Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and the Collective Action Members;

  c. what proof of hours worked is sufficient, where the Defendants fail in its duty to P.F. Chang's to maintain time records;

  d. whether Defendants failed to post or keep posted a notice explaining the minimum wages and overtime pay rights provided by the FLSA in any area where Collective Action Members are employed, in violation of C.F.R. § 516.4;

  e. whether Defendants failed to pay the Collective Action Members minimum wage for hours worked and time and one-half wages for overtime hours worked in violation of the FLSA and the regulations promulgated thereunder;

  g. whether Defendants' violations of the FLSA are willful as that term is used within the context of the FLSA;

4

    h.   whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated, and statutory damages, interest, costs and disbursements and attorneys' fees; and

    i.   whether Defendants should be enjoined from such violations of the FLSA in the future.

15.    Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

## CLASS ALLEGATIONS

16.    Plaintiff sues on his own behalf and on behalf of a class of persons under Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

17.    Plaintiff brings his Michigan Law claims on behalf of all persons who were employed by Defendant as sous-chefs in Michigan at any time since the date three years prior to filing of the complaint in this action (the "Class Period"), and have not been paid legal wages including minimum wages for all hours worked and/or time and one half their regular wages for hours worked over forty in a workweek ("overtime") in violation of the Michigan labor law (the "Michigan Class").

18.    Plaintiff brings his North Carolina Law claims on behalf of all persons who were employed by Defendant as sous-chefs in North Carolina at any time since the date two years prior to filing of the complaint in this action (the "Class Period"), and have not been paid legal wages including minimum wages for all hours worked and/or time and one half their regular wages for hours worked over forty in a workweek ("overtime") in violation of the North Carolina labor law (the "North Carolina Class").

19. The persons in the Michigan and North Carolina Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendant, upon information and belief, there at least 40 members of the Class during the Class Period.

20. The claims of Plaintiffs are typical of the claims of the Michigan Class and North Carolina Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

21. The Defendant has acted or refused to act on grounds generally applicable to the Michigan Class and North Carolina Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

22. Plaintiff is committed to pursuing this action and has retained competent counsel experienced in employment law and class action litigation.

23. Plaintiff has the same interests in this matter as all other members of the Michigan Class and North Carolina Class and Plaintiff's claims are typical of the Michigan Class and North Carolina Class.

24. There are questions of law and fact common to the Michigan Class and North Carolina Class which predominate over any questions solely affecting the individual members of the Michigan and North Carolina Class, including but not limited to:

    a. whether the Defendant employed the members of the Class;

    b.  whether the Defendant failed to keep true and accurate time records for all hours worked by Plaintiffs and members of the Class;

    c.  what proof of hours worked is sufficient where employers fail in their duty to maintain time records;

    d.  whether Defendant failed and/or refused to pay the members of the Class minimum wages and/or overtime wages;

    e.  whether the Defendant is liable for all damages claimed hereunder, including but not limited to compensatory damages, interest, costs and disbursements and attorneys' fees; and

    f.  whether the Defendant should be enjoined from such violations in the future.

## STATEMENT OF FACTS AS TO JEREMY ANDERSON

25.    Anderson was employed full time by P.F. Chang's as a sous chef from about August 5, 2013 to about May 5, 2015 (the "time period").

<u>P.F. Chang's Ohio Restaurant</u>

26.    Anderson first worked for P.F. Chang's in 2008 as a "Line Cook" working in their Beachwood, Ohio restaurant ("Ohio Restaurant"). Anderson was paid by the hour as a Line Cook. Anderson worked as a Line Cook at the Ohio Restaurant continuously from 2008 until about August 5, 2013 with the exception of a medical leave that Anderson took for a back injury.

<u>P.F. Chang's Michigan Restaurant</u>

27.    On about August 5, 2013 Anderson became employed by P.F. Chang's as a cook with the title "Sous Chef" at the P.F. Chang's restaurant at 17904 Hagerty Street, Northville, Michigan ("Michigan Restaurant").

28. At the Michigan Restaurant Anderson worked 4 days a week from 12:00 noon until closing which was from 12:30 a.m. to 1:00 a.m., and 1 day a week from 6:30 a.m. or 8:00 a.m. when Anderson opened the store until closing at 12:30 a.m. to 1:00 a.m.

29. Anderson's two days a week off changed from week to week.

30. At the Michigan Restaurant, Anderson did not get any breaks and generally worked at least 65 hours per week.

31. The Line Cooks at the Michigan restaurant were paid by the hour and worked either the day shift from 9:00 a.m. to 4:00 p.m. for 5 days a week or the night shift from 4:00 p.m. to 12:00 p.m. for 5 days a week.

32. There was always a Manager and/or a Chef managing the store during Anderson's shifts as a Sous Chef at the Michigan Restaurant.

33. As a cook with the title "Sous Chef" at the Michigan restaurant, Anderson was not permitted to leave the kitchen and did the same work as the Line Cooks except that Anderson worked longer hours and was not paid any overtime premium for hours worked over 40 hours in a week.

PF Chang's North Carolina Restaurant

34. On about September 5, 2014, Anderson was employed by P.F. Chang's as a cook with the title "Sous Chef" at the P.F. Chang's restaurant at 6809 Phillips Place Court, Charlotte, North Carolina ("North Carolina Restaurant").

35. At the North Carolina Restaurant Anderson worked 5 days a week from 2:00 p.m. until closing which was from 1:00 a.m. to 1:30 a.m.

36. Anderson's two days a week off changed from week to week.

37. At the North Carolina Restaurant, Anderson did not get any breaks and generally worked at least 55 hours per week.

38. There was always a Manager and/or a Chef managing the store during his shifts as a Sous Chef at the North Carolina Restaurant.

39. The Line Cooks at the North Carolina restaurant were paid by the hour and worked either the day shift from 10:00 a.m. to 4:00 p.m. for 5 days a week or the night shift from 4:00 p.m. to 12:00 p.m. for 5 days a week.

40. As a cook with the title "Sous Chef" at the North Carolina restaurant, Anderson was not permitted to leave the kitchen and did the same work as the Line Cooks except that Anderson worked longer hours and was not paid any overtime premium for hours worked over 40 hours in a week.

41. On or about May 5, 2015, Anderson left the North Carolina restaurant to go back to work for P.F. Chang's in Ohio so that Anderson could help his sick mother.

P.F. Chang's Ohio Restaurant

42. On about March 1, 2015, Anderson again worked at the P.F. Chang's restaurant in Beachwood, Ohio as a Line Cook paid by the hour. Anderson worked there as a Line Cook until June 20, 2016 when Anderson took a disability medical leave of absence. At the end of Anderson's leave of absence on about August 1, 2016, Anderson transferred to the P.F. Chang's restaurant located in Palm Gardens, Florida ("P.F. Chang's Florida Restaurant") where Anderson worked as an hourly Line Cook until October 10, 2016.

43. At the P.F. Chang's Ohio Restaurant and at the P.F. Chang's Florida Restaurant, Anderson observed the Sous Chefs performing the same duties as the Line Chef's except that they

worked weekly shifts that were over 40 hours in a week ("overtime") and were not paid time and one half for their overtime.

General Facts Related to all P.F. Chang's Sous Chefs

44. During the time period, Anderson received a paycheck every two weeks.

45. During the time period, Anderson received an annual salary of about $41,000.

46. Anderson received no pay for sick days.

47. During the time period, Anderson generally worked more than 40 hours each week, often as many as 65 hours a week, and Anderson was not paid overtime compensation at rates equal to or greater than one and one-half times his regular rate of pay for hours worked in excess of forty (40) hours per workweek.

48. During the time period, Anderson's duties did not include managerial responsibilities or the exercise of independent business judgment. During the time period, Anderson did not customarily direct the work of two or more employees and did not customarily review or approve employee hours. During the time period, Anderson never had his own closed office and did not have a computer at work.  During the time period, Anderson did not have the authority to hire or fire or discipline any employees. During the time period, Anderson did not hire or fire or discipline any employee except on one occasion when Anderson wrote up an employee as a result of the direct instruction to do so by the Chef at the Michigan Restaurant.

49. Anderson's schedule was given to him by the Operating Partner or the Chef who made the schedule in the computer system using a program called 'Hot Schedule.'

50. During the time period Anderson worked a schedule that changed week to week.

51. During the time period, Defendant operated, and continues to operate, a chain of Chinese restaurants which provide in house food service and take-out food service.

52. During the time period, Anderson spent over 90% of his time cooking and preparing food, including but not limited to vegetables, tofu, carrots, celery, sauces, dressings, preparing lists for stations, and rice sticks.

53. The P.F. Chang restaurants where Anderson worked (the "P.F. Chang Restaurants") each had over 60 dishes.

54. Each P.F. Chang Restaurant fed approximately 400-600 people per day.

55. At Anderson's job as a cook with the title "Sous Chef," Anderson did not regularly prepare schedules for other employees. Anderson did not hire or fire employees and had no authority or right to hire or fire employees.

56. The general manager and the Chef had the sole right to hire and fire employees working at the P.F. Chang Restaurants.

57. During the time period, Anderson's job responsibilities did not require any independent judgment.

58. Upon information and belief, there are at least 200 other Sous Chefs employees employed by Defendant during the last three years, who worked more than forty (40) hours in a workweek, and were not paid for all of their hours worked, and did not receive time and one half for their hours worked over forty (40) in a workweek.**.**

59. Throughout the time period, Defendant has likewise employed other individuals, like Anderson, in positions as Sous Chefs.

60. Throughout the time period, such individuals have worked more than 40 hours per week for Defendant, yet the Defendant has likewise failed to pay them overtime wages for all hours worked over 40 in a workweek.

## FIRST CLAIM FOR RELIEF
## FAIR LABOR STANDARDS ACT

61. Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

62. At all relevant times, Defendants have been and continue to be, an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

63. At all relevant times, Defendants employed, and/or continue to employ, Plaintiff and each of the Collective Action Members within the meaning of the FLSA.

64. Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.00.

65. Plaintiff consents in writing to being a party to this action, pursuant to 29 U.S.C. §216(b). Plaintiff's written consent is attached as Exhibit A to this complaint.

66. At all relevant times, Defendants had a policy and practice of refusing to pay (a) minimum wages to its employees with the title "sous chef" and/or (b) overtime wages at time and one half the regular wage to its employees with the title "sous chef" for their hours worked in excess of 40 hours per workweek.

67. As a result of the Defendant's willful failure to compensate its employees, including Plaintiff and the Collective Action Members, at the minimum and overtime wage rate for all hours worked and at the time and one half rate for hours worked over forty in a week, the Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 203(m), 207(a)(1) and 215(a).

12

68.     As a result of the Defendant's failure to record, report, credit and/or compensate its employees, including Plaintiff and the Collective Action Members, the Defendant has failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, et seq., including 29 U.S.C. §§ 211(c) and 215(a).

69.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

70.     Due to the Defendant's FLSA violations, Plaintiff and the Collective Action Members are entitled to recover from the Defendants, their unpaid wages, an additional amount equal as liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF
## MICHIGAN LABOR LAW

71.     Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

72.     During the past 3 years, Plaintiff and the members of the Michigan Class were employed by the Defendants within the meaning of the Michigan labor law.

73.     Defendants willfully violated the rights of Plaintiff and the Michigan Class by failing to pay Plaintiff and the members of the Michigan Class minimum wages, wages for hours worked, and/or overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of 40 hours in a workweek, in violation of the Michigan labor law.

74. The Defendant's Michigan labor law violations have caused Plaintiffs and the members of the Michigan Class irreparable harm for which there is no adequate remedy at law.

75. Due to the Defendant's Michigan labor law violations, Plaintiff and the members of the Class are entitled to recover from Defendants their unpaid wages, unpaid overtime compensation, punitive damages, reasonable attorneys' fees, and costs and disbursements of the action.

### SECOND CLAIM FOR RELIEF
### NORTH CAROLINA LABOR LAW

76. Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

77. During the past three years, Plaintiff and the members of the North Carolina Class were employed by the Defendants within the meaning of the North Carolina labor law.

78. Defendants willfully violated the rights of Plaintiff and the Class by failing to pay Plaintiff and the members of the Class minimum wages, wages for hours worked, and/or overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of 40 hours in a workweek, in violation of the North Carolina labor law.

79. The Defendant's North Carolina labor law violations have caused Plaintiff and the members of the North Carolina Class irreparable harm for which there is no adequate remedy at law.

80. Due to the Defendant's North Carolina labor law violations, Plaintiff and the members of the Class are entitled to recover from Defendants their unpaid wages, unpaid overtime compensation, punitive damages, reasonable attorneys' fees, and costs and disbursements of the action.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff and the other similarly situated Collective Action Members, respectfully request that this Court grant the following relief:

a. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(1), (2) and (3) on behalf of the members of the Michigan Class and the North Carolina Class and appointing Plaintiff and his counsel to represent the Michigan Class and North Carolina Class;

b. Designation of this action as a collective action on behalf of the Collective Action Members and appointing Plaintiff and his counsel to represent the Collective Action members;

c. Equitable tolling of the statute of limitations;

d. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the Michigan labor law and the North Carolina labor law;

e. An injunction against the Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f. An award of wages and damages due under the FLSA and the Michigan labor law and the North Carolina labor law;

g. An award of liquidated and/or punitive and/or statutory damages as a result of the Defendant's willful failure to pay wages pursuant to 29 U.S.C. § 216 and the Michigan labor law and the North Carolina labor law;

h. An award of prejudgment and postjudgment interest;

    i.       An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

    j.       Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: November 29, 2016

                              /s/ Sergei Lemberg
                              Sergei Lemberg, Esq.
                              LEMBERG LAW, LLC
                              43 Danbury Road
                              Wilton, CT 06897
                              Telephone: (203) 653-2250
                              Facsimile: (203) 653-3424

                              William C. Rand (expected to be admitted pro hac vice)
                              Law Office of William Courdert Rand
                              501 Fifth Ave., 15th Floor
                              New York, N.Y. 10017
                              Telephone: (212) 286-1425
                              Facsimile: (646) 688-3078

                              *Attorneys for Plaintiff JEREMY ANDERSON*

CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of P.F. CHANG'S CHINA BISTRO, INC. AND ASSOCIATED PERSONS AND/OR ENTITIES to pay me overtime wages and/or minimum wages as required under state and/or federal law and also authorize the filing of this consent in the action(s) challenging such conduct.

\_\_\_Jeremy Anderson_____  _____
Print Name                                          Signature

Date: _____November 16,_____, 2016