## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JEREMY ANDERSON,

               Plaintiff,             CASE NO. 16-14182
                                    HON. DENISE PAGE HOOD

v.

P.F. CHANG'S CHINA BISTRO, INC.,
DOES #1-10,

               Defendants.

_____/

## ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS [#14], AND DENYING PLAINTIFF'S MOTION FOR COLLECTIVE ACTION CERTIFICATION [#17] WITHOUT PREJUDICE

## BACKGROUND

On November 29, 2016, Plaintiff Jeremy Anderson ("Anderson") filed this case against Defendants P.F. Chang's China Bistro, Inc. ("P.F. Chang's") and John Does # 1-10 alleging violations of the Fair Labor Standards Act ("FLSA"), Michigan labor law, and North Carolina labor law. (Doc # 1) Anderson seeks to prosecute his claims as a collective action on behalf of all persons who are or were formerly employed by Defendants as sous chef employees or similar positions with different titles who were non-exempt employees within the meaning of the FLSA and who were not paid minimum wage for hours worked and/or were not paid

overtime for hours worked over 40 hours in a work week during the three years prior to the filing on this case.

On February 1, 2017, P.F. Chang's filed an Answer and Counterclaims against Anderson alleging accounting and offset/recoupment, breach of contract, breach of good faith and fair dealing, unjust enrichment and restitution, and faithless servant.  (Doc # 8)  On March 8, 2017, Anderson filed a Motion to Dismiss P.F. Chang's Counterclaims.  (Doc # 14)  P.F. Chang's filed a Response on March 29, 2017.  (Doc # 19)  Anderson filed a Reply on May 12, 2017.  (Doc # 25)  On March 27, 2017, Anderson filed a Motion for Collective Action Certification.  (Doc # 17)  P.F. Chang's filed a Response on May 30, 2017.  (Doc # 27)  Anderson filed a Reply on June 12, 2017.  (Doc # 29)  The Court held a hearing on the Motions on June 21, 2017.

Anderson began working for P.F. Chang's, an Asian-themed restaurant chain, in 2008 as a Line Cook in the Beachwood, Ohio restaurant.  As a Line Cook, Anderson was paid by the hour.  Anderson worked at this Ohio restaurant until about June 2013.  Starting in or about August 2013, Anderson became a Sous Chef at the P.F. Chang's restaurant in Northville, Michigan.  He worked at the Michigan restaurant until about September 2014.  From about September 2014 to about March 2015, Anderson worked as a Sous Chef at the P.F. Chang's restaurant in Charlotte, North Carolina.

Anderson asserts that, as a Sous Chef in the Michigan and North Carolina restaurants, he was a non-exempt employee within the meaning of the FLSA. He claims that he is entitled to back wages for work performed for which P.F. Chang's did not pay him the legal minimum wage or overtime wages. According to Anderson, he worked four days a week, for approximately 66.5 to 70.5 hours per week at the Michigan restaurant. He claims he worked five days a week, for approximately 55 hours per week at the North Carolina restaurant.

Anderson alleges that, as a Sous Chef in the Michigan and North Carolina restaurants, he spent over 90 percent of his time cooking and preparing food. Anderson alleges that he did the same work as hourly Line Cooks except that he worked longer hours as a Sous Chef and was not paid any overtime premium for hours worked over 40 hours in a week. Anderson claims that he did not get any breaks and was not permitted to leave the kitchen at either the Michigan restaurant or the North Carolina restaurant. He alleges that his duties as a Sous Chef did not include managerial responsibilities or the exercise of independent business judgment. Anderson further alleges that he did not customarily direct the work of two or more employees, review or approve employee hours, or prepare schedules. According to the Complaint, Anderson did not have authority to and did not hire, fire, or discipline employees (except on one occasion when Anderson wrote up an

employee as a result of the direct instruction to do so by the Chef at the Michigan restaurant).

From about March 2015 to about June 2016, Anderson worked as an hourly Line Cook back at the P.F. Chang's restaurant in Ohio. From about August 2016 to about October 2016, Anderson worked as an hourly Line Cook at the P.F. Chang's restaurant in Palm Gardens, Florida. Anderson alleges that he observed Sous Chefs at the Ohio and Florida restaurants performing the same duties as Line Cooks, except that Sous Chefs worked weekly shifts that were over 40 hours and were not paid time and one half for their overtime.

According to P.F. Chang's, Line Cooks are hourly, non-exempt employees who are responsible for preparing food for customers; Sous Chefs, on the other hand, receive salaries and are exempt employees not entitled to overtime compensation. P.F. Chang's alleges in its Counterclaims that the Sous Chef position entails additional pay and benefits, not available to hourly cooks, in exchange for the regular performance of managerial and other exempt duties.

P.F. Chang's points to the Sous Chef Position Description that was applicable at the Ohio restaurant at the time that Anderson was being considered for the promotion from Line Cook to Sous Chef. This Position Description states that the Sous Chef position is a management position designed to manage and execute all kitchen functions. (Doc # 8-2) It describes the essential functions of

4

the position to include:  supervising, assigning, delegating tasks, and giving direction to the kitchen staff; ensuring proper timing and production of all food orders; preparing work schedules for all kitchen staff; supervising and facilitating training of all food preparation and execution of all menu items, procedure, and recipes; maintaining all product quality standards; completing prep lists; completing ordering guides; assisting with interviewing, hiring, and discharging employees; assisting in providing feedback to staff; handling disciplinary activities and recognition of staff; holding "front of the house" staff accountable for dress code standards; being accountable for following safety and sanitation guidelines; completing and costing all food inventories; completing opening and closing checklists; and managing the P.F. Chang's Message. *Id.*  The Position Description also states:  "The largest percentage of a Sous Chef['s] work day is spent directing and supervising the employees on that shift.  S/he operates with a great deal of independent decision-making and discretionary authority. . . . In the absence of the Culinary Partner, the Sous Chef is the back of the house lead." *Id.*

According to P.F. Chang's, after learning of the aforementioned Sous Chef Position requirements, Anderson agreed to go through a "weeks' long" Manager in Training ("MIT") formal training program.  Anderson acknowledged and signed P.F. Chang's' Management Fraternization Policy, which prohibits managers from dating non-management employees.  (Doc # 8-3)  Anderson also acknowledged

5

and signed P.F. Chang's' Immigration Policy and I-9 Compliance Plan, agreeing that he understood his "responsibility as a member of management to follow proper hiring and immigration-related procedures." (Doc # 8-4) P.F. Chang's claims that Anderson was trained on managerial duties and received a copy of the Position Description.

The Counterclaim alleges that Anderson was expected to, and did, instruct team members on best practices so that they could most effectively complete their own tasks and allow him the flexibility to supervise and support each station in the back of the house. P.F. Chang's claims that Anderson conducted one-on-one coaching and counseling sessions with employees, and he was not required to seek approval from any other member of management to do so. P.F. Chang's claims that Anderson provided formal and informal performance reviews to employees he managed, and he was required to draw on his observations while managing employees and exercise his independent judgment in determining whether employees were exceeding, meeting, or not meeting expectations. According to P.F. Chang's, Anderson also helped conduct interviews and hire new employees, and he could end a candidate's application process if, using his independent judgment, he did not feel the candidate was a good fit. The Counterclaim alleges that Anderson was expected to, and did, use his judgment when completing inventory for his specific restaurant, and after conducting an analysis of his

particular restaurant's needs at any given moment, forecast what food and supplies to place in upcoming orders. According to P.F. Chang's, the Operating Partners and/or Culinary Partners at the Michigan and North Carolina restaurants observed Anderson perform hiring, training, coaching, scheduling, and disciplining of "back of the house" employees.

P.F. Chang's claims that, as a Sous Chef, Anderson received a salary for all hours of work and was an exempt employee not entitled to overtime compensation. According to Anderson's Complaint, he received an annual salary of about $41,000.00. According to the Counterclaim, as a Sous Chef, Anderson received and accepted an annual salary of $41,000.00, which was thereafter increased to $42,000.00 and subsequently increased to $43,000.00. The Counterclaim further alleges that Anderson received and accepted paid vacation time, eligibility for health insurance benefits, long-term disability benefits, and short-term disability benefits—which are only provided to management and not to hourly employees.

P.F. Chang's maintains that, to the extent Anderson is found to have regularly performed primarily non-exempt duties (as Anderson alleges in his Complaint) during any time he held the position of Sous Chef, he has materially breached his agreement to primarily perform exempt duties, and P.F. Chang's has suffered damages as a result of compensating Anderson for the performance of managerial duties which he agreed to, but allegedly did not, perform. P.F. Chang's

further asserts that Anderson acted in bad faith by accepting a promotion to Sous Chef and accepting higher pay and additional benefits in exchange for the performance of managerial and exempt duties, and then performing primarily non-exempt duties without informing P.F. Chang's about it.

## II.    MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS

### A. Standard of Review

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal for lack of jurisdiction over the subject matter.  Fed. R. Civ. P. 12(b)(1).  Motions under Rule 12(b)(1) fall into two general categories:  facial attacks and factual attacks.  *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  A facial attack challenges the pleading itself.  In considering this type of attack, the court must take all material allegations in the complaint as true, and construe them in the light most favorable to the non-moving party.  *Id.*  Where subject matter jurisdiction is factually attacked, the plaintiff bears the burden of proving jurisdiction to survive the motion, and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *Id.*  In a factual attack of subject matter jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  *Id.*

### B. Subject Matter Jurisdiction

Anderson argues that the Court lacks subject matter jurisdiction over P.F. Chang's' state-law Counterclaims because there is no original federal jurisdiction; the Counterclaims are not compulsory; the Counterclaims do not derive from a common nucleus of operative facts with Anderson's claims; and public policy weighs against allowing in the retaliatory Counterclaims.

P.F. Chang's responds that the Counterclaims are compulsory because they arise out of the exact same transaction or occurrence as Anderson's claims. P.F. Chang's also argues that, even if the Court were to determine that the Counterclaims are not compulsory, the Counterclaims are permissive, and no facts or allegations exist to warrant declining supplemental jurisdiction.

Anderson facially attacks the Counterclaims, so the Court takes the allegations in the Counterclaims as true and construes them in the light most favorable to P.F. Chang's. *See RMI Titanium Co.*, 78 F.3d at 1134. The Counterclaims raise questions of state law, and do not raise federal questions. P.F. Chang's fails to allege the amount in controversy, which does not appear to meet the $75,000.00 minimum for diversity jurisdiction. Accordingly, there is no original federal jurisdiction, and the Court must decide whether to exercise supplemental jurisdiction over P.F. Chang's' Counterclaims.

9

28 U.S.C. § 1367 gives the Court discretion to exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. "Claims form part of the same case or controversy when they derive from a common nucleus of operative facts." *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 209 (6th Cir. 2004) (internal quotations and citation omitted). Section 1367 further guides a court in determining whether supplemental jurisdiction should be exercised:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> > (1) the claim raises a novel or complex issue of State law,
> >
> > (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> >
> > (3) the district court has dismissed all claims over which it has original jurisdiction, or
> >
> > (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Rule 13 of the Federal Rules of Civil Procedure defines two types of counterclaims: (1) compulsory counterclaims, which arise "out of the transaction or occurrence that is the subject matter of the opposing party's claim" and do "not

10

require adding another party over whom the court cannot acquire jurisdiction;" and (2) permissive counterclaims, which are any counterclaims that are not compulsory. Fed. R. Civ. P. 13. A counterclaim arises out of the same transaction or occurrence as the original claim if the issues of law and fact raised by the claims are largely the same or if substantially the same evidence would support or refute both claims. *Sanders v. First Nat'l Bank & Trust Co. in Great Bend*, 936 F.2d 273, 277 (6th Cir. 1991).

In this case, the parties' claims involve different laws and evidence. Anderson's labor claims focus on how many hours he worked, how much he was paid, and whether, as a Sous Chef, he was an exempt or non-exempt employee under the FLSA. P.F. Chang's' Counterclaims, on the other hand, involve questions of whether the parties had a contract (P.F. Chang's does not include any written contract signed by the parties), what any contract required, whether Anderson breached any contract, whether Anderson was unjustly overpaid for work he performed, whether Anderson engaged in misconduct or grossly mismanaged P.F. Chang's' affairs, and to what extent, if any, P.F. Chang's was damaged. The Court finds that P.F. Chang's' Counterclaims are not compulsory because they do not arise from the same transaction or occurrence as Anderson's claims. *See Sneed v. Wireless PCS Ohio #1, LLC*, No. 1:16CV1875, 2017 WL 879591, at *2 (N.D. Ohio Mar. 6, 2017); *Wagoner v. N.Y.N.Y., Inc.*, No. 1:14-CV-

480, 2015 WL 1468526, at *3 (S.D. Ohio Mar. 30, 2015) ("Though the outcome of the minimum wage determination may also impact Defendant's breach of contract counterclaim, that breach of contract counterclaim seeks affirmative relief and will require investigation into the validity of the contract Plaintiff entered into with Defendant and whether Plaintiff breached that contract."); *Morris v. Blue Sky Mgmt., LLC*, No. 11-00979-CV-DGK, 2012 WL 527936, at *3-4 (W.D. Mo. Feb. 16, 2012) (holding that counterclaims for breach of contract, breach of fiduciary duty, breach of duty of loyalty, and unjust enrichment did not share a common nucleus of operative fact with the plaintiff's FLSA claim even though the question of whether the plaintiff was an exempt worker as defined by the FLSA was pertinent to both claims).[1]

Having found that P.F. Chang's' Counterclaims are permissive, the Court next turns to determining whether to exercise supplemental jurisdiction under 28 U.S.C. § 1367.  The Counterclaims are not so related to Anderson's claims that they form part of the same case or controversy because they do not derive from a

---

[1] P.F. Chang's relies heavily on *Doe v. Cin-Lan, Inc.* in support of its argument that its Counterclaims are compulsory.  *See Doe v. Cin-Lan, Inc.*, No. 08-CV-12719, 2010 WL 726710, at *5 (E.D. Mich. Feb. 24, 2010).  However, Anderson correctly notes that *Cin-Lan* did not concern a challenge to subject matter jurisdiction.  Rather, the court's analysis centered on whether the law permits a contingent counterclaim, and whether the defendant had suffered any harm sufficient to state a breach of contract counterclaim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See id.*; *see also Wagoner*, 2015 WL 1468526, at *4 (acknowledging *Cin-Lan* in footnote 2, while collecting cases that held that state law counterclaims based on breach of contract or other state common laws do not arise out of the same occurrence as claims for statutory minimum wage).

common nucleus of operative facts. The accounting and offset/recoupment, breach of contract, unjust enrichment and restitution, and faithless servant Counterclaims arise under state law not implicated in Anderson's claims. Although there would be some evidentiary overlap regarding the type of duties that Anderson performed as a Sous Chef, the Counterclaims would involve a substantial amount of additional evidence that would not be necessary to prove or defend Anderson's claim. *See Sneed*, 2017 WL 879591, at *3; *Coronado v. D. N.W. Houston, Inc.*, No. CIV.A. H-13-2179, 2014 WL 2779548, at *4 (S.D. Tex. June 19, 2014) (holding that the proposed counterclaims did not form part of the same case or controversy as the FLSA claim because the FLSA claims turned on the economic realities of the relationship between the parties, while the proposed counterclaims turned on contract language and issues of consideration, conscionability, and the defendant's damages).

Even if P.F. Chang's' Counterclaims derived from a common nucleus of operative facts with Anderson's claims, the Court declines to exercise supplemental jurisdiction over the Counterclaims because of the concern that the Counterclaims would change the nature of this lawsuit and substantially predominate over Anderson's statutory wage claims. P.F. Chang's' Counterclaims outnumber Anderson's claims, are distinct from Anderson's claims, and involve proof that is not needed to establish or defend Anderson's claims. *See Sneed*, 2017

WL 879591, at *3.  Many federal courts have also noted that counterclaims in FLSA litigation should be disfavored because they could be viewed as retaliation for an employee bringing an FLSA claim against the employer.  *Id.*; *Morris*, 2012 WL 527936, at *4-5.  As the Fifth Circuit has noted,

> The FLSA decrees a minimum unconditional payment and the commands of that Act are not to be vitiated by an employer, either acting alone or through the agency of a federal court.  The federal courts were not designated by the FLSA to be either collection agents or arbitrators for an employee's creditors.  Their sole function and duty under the Act is to assure to the employees of a covered company a minimum level of wages.  Arguments and disputations over claims against those wages are foreign to the genesis, history, interpretation, and philosophy of the Act.  The only economic feud contemplated by the FLSA involves the employer's obedience to minimum wage and overtime standards.  To clutter these proceedings with the minutiae of other employer-employee relationships would be antithetical to the purpose of the Act. Set-offs against back pay awards deprive the employee of the "cash in hand" contemplated by the Act, and are therefore inappropriate in any proceeding brought to enforce the FLSA minimum wage and overtime provisions, whether the suit is initiated by the individual employees or by the Secretary of Labor.

*Brennan v. Heard*, 491 F.2d 1, 4 (5th Cir. 1974), *overruled on other grounds,*

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988).[2]

---

[2] The Court notes that P.F. Chang's seeks more than a defensive offset in its Counterclaims as permitted under the FLSA.  P.F. Chang's seeks affirmative relief for damages arising from Anderson asserting the statutory right to be properly classified and compensated under the FLSA and other labor statutes.  As the court noted in *Wagoner*, "[t]he statutory scheme of the FLSA provides for certain offsets and credits when appropriate, and no separate affirmative common law counterclaim is necessary to adjudicate those issues."  2015 WL 1468526, at *5.  P.F. Chang's has pled offset as an affirmative defense.  "As such, counterclaims raising other minutiae of employer-employee relationships are contrary to the purposes of the statutory provisions."  *Id.*; *see also Coronado*, 2014 WL 2779548, at *3 (finding that the proposed setoff counterclaim was not compulsory because it had not yet matured).  The Court further notes, as

The Court declines to exercise supplemental jurisdiction over the Counterclaims in this case. The Court dismisses without prejudice P.F. Chang's' Counterclaims for lack of subject matter jurisdiction. Because the Court lacks subject matter jurisdiction over the Counterclaims, the Court need not reach the parties' remaining arguments under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## III.    MOTION FOR COLLECTIVE ACTION CERTIFICATION

### A. Standard of Review

Anderson seeks conditional class certification and judicial notice of a collective action as permitted under Section 216(b) of the FLSA:

> An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees *similarly situated*. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b) (emphasis added).

Unlike class actions under Rule 23 of the Federal Rules of Civil Procedure, collective actions under the FLSA require putative class members to opt into the

---

was observed in *Sneed*, that "[n]othing stops defendants from suing plaintiff for damages in state court. A state court judgment could be used as a set off to any judgment plaintiff obtains in this case. But these practical concerns don't give rise to federal jurisdiction." 2017 WL 879591, at *3 n.6. The Court acknowledges that P.F. Chang's has cited some case law that supports its argument that the Court should exercise supplemental jurisdiction over its Counterclaims for reasons of judicial economy and efficiency; however, this Court finds the cases cited above to be more persuasive for the reasons set forth above.

class, and these opt-in employees are party plaintiffs, unlike absent class members in a Rule 23 class action. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006); *Fisher v. Michigan Bell Tel. Co.*, 665 F. Supp. 2d 819, 824 (E.D. Mich. 2009).

Section 216(b) of the FLSA establishes two requirements for a collective action:  (1) the plaintiffs must actually be similarly situated; and (2) all plaintiffs must signal in writing their affirmative consent to participate in the action. *Comer*, 454 F.3d at 546.  The district court's first task is to "consider whether the plaintiffs have shown that the employees to be notified [of the collective action] are, in fact, 'similarly situated.'" *Id.*  If the plaintiffs meet their burden, then the district court may exercise its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit. *Id.*

In order to determine whether the plaintiffs are similarly situated, district courts generally follow a two-stage certification process. *Id.*; *Fisher*, 665 F. Supp. 2d at 825.

> The first stage of § 216(b) certification, also known as the "notice stage," takes place early in the litigation; i.e., at the beginning of discovery.  It is here where the court determines whether the suit should be "conditionally certified" as a collective action so that potential opt-in plaintiffs can be notified of the suit's existence and of their right to participate.  The second stage occurs much later; after all of the opt-in forms have been received and discovery has been concluded.

*Fisher*, 665 F. Supp. 2d at 825 (internal quotations and citations omitted).

At the second stage, the court has much more information and employs a stricter standard to decide whether particular members of the class are, in fact, similarly situated. *Comer*, 454 F.3d at 547. "The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Shipes v. Amurcon Corp.*, No. 10-14943, 2012 WL 995362, at *4 (E.D. Mich. Mar. 23, 2012) (internal quotation marks and citation omitted).

Through the instant Motion, Anderson seeks only conditional certification at the notice stage, not final certification. "District courts use a fairly lenient standard that typically results in conditional certification of a representative class when determining whether plaintiffs are similarly situated during the first stage of the class certification process." *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012) (internal quotations and citations omitted). "The plaintiff must show only that his position is similar, not identical, to the positions held by the putative class members." *Comer*, 454 F.3d at 546-47 (internal quotations and citations omitted). "[A] named plaintiff can show that the potential claimants are similarly situated by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Olivo v. GMAC Mortg. Corp.*, 374 F. Supp. 2d 545, 548 (E.D. Mich. 2004).

17

"Although the standard for granting conditional certification is lenient, it is not non-existent." *Cason v. Vibra Healthcare*, No. 10-10642, 2011 WL 1659381, at *3 (E.D. Mich. May 3, 2011). At this stage, courts consider factors such as whether potential plaintiffs have been identified; whether affidavits of potential plaintiffs have been submitted; and whether evidence of a widespread unlawful policy or plan has been submitted. *Olivo*, 374 F. Supp. 2d at 548.

At this first stage of conditional certification, the court "does not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations." *Fisher*, 665 F. Supp. 2d at 826. Additionally, the plaintiff's evidence on a motion for conditional certification "is not required to meet the same evidentiary standards applicable to motions for summary judgment because to require more at this stage of the litigation would defeat the purpose of the two-stage analysis under Section 216(b)," and would fail to take into account that the plaintiff "has not yet been afforded an opportunity, through discovery, to test fully the factual basis of his case." *Id.* (internal quotations and citations omitted). Nevertheless, affidavits submitted at the notice stage must still be based on the personal knowledge of the affiant. *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 369 (E.D. Tenn. 2006).

**B. Whether Anderson Has Sufficiently Shown That A Class of Similarly Situated Potential Sous Chef Plaintiffs Exists**

Anderson argues that the Court should grant conditional certification of a collective action class consisting of current and former employees of P.F. Chang's who worked as food preparation employees with the title "Sous Chef" or in other similar non-managerial, non-administrative positions on or after November 20, 2013. Anderson argues that courts have consistently granted collective action certification to sous chefs under the FLSA. Anderson further argues that courts have granted collective action certification where employees were misclassified. In support of his Motion, Anderson includes his own declaration as well as a declaration from Patrick Stancil ("Stancil"), a former P.F. Chang's employee. Anderson argues that the two declarations demonstrate that P.F. Chang's adopted and adhered to a policy requiring their cooks with the title "Sous Chef" to work a double shift in excess of 40 hours per week and paid them a salary but failed to pay them overtime compensation in violation of the FLSA.

P.F. Chang's argues that Anderson cannot meet his burden of demonstrating the appropriateness of conditional certification based solely on his conclusory declarations that his and Stancil's experiences are similar to those of the approximately 900 other Sous Chefs across over 200 P.F. Chang's locations. P.F. Chang's further argues that uniform classification does not demonstrate that Sous Chefs are similarly situated. According to P.F. Chang's, Anderson has not offered

19

sufficient evidence to show a nationwide *de facto* illegal policy pursuant to which Sous Chefs are assigned duties that render inappropriate P.F. Chang's exempt classification of the Sous Chef position.  In support of its position, P.F. Chang's includes declarations from twelve individuals who work/worked as Sous Chefs in sixteen different P.F. Chang's restaurants.  P.F. Chang's also points to Anderson's deposition testimony indicating that he had some exempt duties as Sous Chef, and indicating that he lacks personal knowledge regarding the duties carried out by any other Sous Chef.

Anderson replies that the declarations submitted by P.F. Chang's have little evidentiary value at the conditional certification notice stage.  Anderson notes that he has not had the opportunity to depose the employees of P.F. Chang's who submitted declarations on P.F. Chang's' behalf, and that these witnesses were not disclosed in the Rule 26 disclosure or interrogatory responses.  Anderson asserts that these declarants have been cherry-picked by P.F. Chang's and are under P.F. Chang's' control and potentially subject to coercion.

A named plaintiff is not similarly situated to a proposed plaintiff simply because they share exempt status.  *Shipes*, 2012 WL 995362, at *9.  In misclassification cases, "similarly situated" must be analyzed in terms of the nature of the job duties performed by each class member, as the ultimate issue to be determined is whether each employee was properly classified as exempt. . . . A

collective action is only appropriate where the plaintiffs make a modest factual showing that the nature of the work performed by all class members is at least similar to their own. *Id.* at *10.

> To certify a class covering all of defendant's locations, plaintiffs do not need to allege facts or present other evidence for each of those locations. Nonetheless, plaintiffs must provide sufficient evidence of a company-wide practice through declarations of present and former employees at other locations to justify sending notice to similarly situated employees at all locations at issue in the litigation.

*Cobus v. DuHadway, Kendall & Assocs., Inc.*, No. 13-CV-14940, 2014 WL 4181991, at *5 (E.D. Mich. Aug. 21, 2014).

The Court turns to the factual showing put forth by Anderson. As noted before and according to Anderson's declaration, as a P.F. Chang's Sous Chef during the relevant time period, he worked for approximately 66.5 to 70.5 hours per week at the Michigan restaurant, and approximately 55 hours per work at the North Carolina restaurant. He spent over 90 percent of his time cooking and preparing food, and he did the same work as hourly Line Cooks except that he worked longer hours as a Sous Chef and was not paid any overtime premium for hours worked over 40 hours in a week. He did not get any breaks and was not permitted to leave the kitchen. His duties as a Sous Chef did not include managerial responsibilities or the exercise of independent business judgment. He did not customarily direct the work of two or more employees, review or approve employee hours, or prepare schedules. He did not have authority to and did not

21

hire, fire, or discipline employees (except on one occasion when Anderson wrote up an employee as a result of the direct instruction to do so by the Chef at the Michigan restaurant).   Anderson's declaration further states that, at the Ohio restaurant and Florida restaurant where he worked as a Line Cook, he observed the Sous Chefs performing the same duties as the Line Cooks, except that they worked weekly shifts that were over 40 hours in a week and were not paid overtime. Anderson's Reply Declaration states that, during 2016, P.F. Chang's changed their policy and divided Sous Chefs into two categories:   regular "Sous Chefs" who cook and are paid hourly including overtime, and "Senior Sous Chefs" who are paid a salary and are not paid overtime and are prohibited from performing any cooking work.  (Doc # 29-3, Pg ID 529-28)

Anderson does not make any specific allegations regarding the *primary* duties of Sous Chefs at the Ohio or Florida restaurants, or regarding the percentage of time the Sous Chefs spent on "Line Cook" duties versus any other duties. Notably, Anderson makes no allegations regarding other Sous Chefs who worked in the Michigan or North Carolina restaurants at the same time as him.  During his deposition, Anderson could not recall duties performed by any other P.F. Chang's Sous Chefs, even at locations where he worked.  Anderson further testified that, outside of speculation and talk around the restaurants where he worked about Sous

Chefs being "glorified cooks," he has no personal knowledge of the duties of any other Sous Chefs.

The Court takes note that parts of Anderson's deposition testimony seem to contradict his own declaration. For example, his declaration states that his duties did not include any managerial responsibilities. However, Anderson testified at his deposition that there were times when he was the person in charge of the kitchen, overseeing kitchen staff. He testified that he had the authority to direct staff to complete tasks. He testified that if a Line Cook prepared a dish incorrectly, it would come back to him as Sous Chef. He testified that if something went wrong, the issue would come to the manager or to him as Sous Chef, and not to the Line Cooks.

The Court next turns to Stancil's declaration, the only other declaration that Anderson has put forth to support conditional certification. Stancil declares that he worked as a P.F. Chang's Sous Chef during the relevant time period in the Stamford, Connecticut restaurant. According to Stancil, his duties as a Sous Chef did not include managerial responsibilities or the exercise of independent business judgment. He did not customarily direct the work of two or more employees, or review or approve employee hours. He did not have authority to and did not hire, fire, or discipline employees. Stancil declares that he often worked 60-75 hours per week, and that he spent 50-60% of his time cooking on the line. Most of the

23

remainder of his time was spent on food-preparation tasks.  He spent some time checking whether orders were correct before going out, keeping times of the tickets and checks, 1-2 hours per week drafting schedules for approval, and 1-2 hours per week ordering inventory.  The Court also notes that Stancil has not opted into this proposed collective action and cannot do so.

Stancil's declaration states that he worked with two other Sous Chefs at the Stamford restaurant, Amilcar Huyhua ("Huyhua") and Omar Vega.  Stancil also talked to Lamar and Andrew who work at the P.F. Chang's in Farmington, Connecticut.  Stancil talked to Jose and Fransciso who work as Sous Chefs at the P.F. Chang's in White Plains, New York.  Stancil talked to Jaime, a Sous Chef at the P.F. Chang's in Albany, New York.  Stancil talked to Vance, a former P.F. Chang's Sous Chef who worked at the restaurant in Syracuse, New York.  And Stancil talked to Greg who works as a Sous Chef at the P.F. Chang's in Nanuet, New York.  The declaration includes no description of the duties that these nine individuals performed as Sous Chefs, and no statement regarding whether the duties were exempt, non-exempt, or some combination.  The declaration simply states that Stancil knows, based on an unknown number of conversations on unknown dates, that these people had "the same job" as Stancil, worked much more than 40 hours per week, were paid a salary, and were not paid overtime

premium pay. The Court notes that none of these individuals have opted into this proposed collective action.

Anderson also attaches a complaint from another action to his Reply to add to his factual showing. This action was brought by Stancil and Huyhua against P.F. Chang's in the District of Connecticut in July 2015. Defendants assert that this action was voluntarily dismissed. A review of this complaint shows that the allegations as to Stancil are the same as what he states in his declaration discussed above. The allegations as to Huyhua are very similar, although no declaration or sworn testimony from Huyhua has been submitted to this Court. Huyhua has not opted into this proposed collective action either.

P.F. Chang's, on the other hand, has put forth the declarations of (1) Angie Adler, Director of HR Field Operations at P.F. Chang's; (2) Moria Saunders, Sous Chef at the P.F. Chang's in Boca Raton, Florida; (3) Paul Duco, Sous Chef at the P.F. Chang's in Sherman Oaks, California; (4) Carey Ball, Culinary Partner at the P.F. Chang's in Raleigh, North Carolina (and former Sous Chef at this same restaurant); (5) Michael Smalley, Sous Chef at the P.F. Chang's in Miami, Florida (and previously Sous Chef at the P.F. Chang's in Boca Raton, Florida, and Culinary Partner at the P.F. Chang's in Palm Beach, Florida); (6) Nick Lucas, Sous Chef at the P.F. Chang's in Austin, Texas; (7) Jaime Hoffman, Sous Chef at the P.F. Chang's in Albany, New York; (8) Nhat Le, Culinary Partner at the P.F.

Chang's in Durham, North Carolina (and previously Sous Chef at the P.F. Chang's in Ashville, North Carolina, as well as the P.F. Chang's in Greensboro, North Carolina; (9) Edward Dunham, Operating Partner at the P.F. Chang's in Towson, Maryland (and previously Sous Chef at the P.F. Chang's in Chevy Chase, Maryland); (10) Keith Bussue, Senior Sous Chef at the P.F. Chang's in Galleria Mall, Ft. Lauderdale, Florida (and previously Sous Chef at the P.F. Chang's in Falls Mall and also Dolphin Mall—both in Miami, Florida); (11) Ben Delgado, Senior Sous Chef at the P.F. Chang's in Chattanooga, Tennessee; (12) Gerry Heim, Sous Chef at the P.F. Chang's in Northville, Michigan; and (13) John Lopez, Sous Chef at the P.F. Chang's in The Falls, Miami, Florida.   A review of these declarations indicates that, as Sous Chefs, these individuals spent a varying percentage of time on exempt managerial tasks, seemingly based on the needs of the company in different locations at different times, and the varying preferences of different Culinary Partners.  Each of them declared that they spent the majority of their time, as P.F. Chang's Sous Chefs, on managerial duties.

The Court takes note that one of P.F. Chang's' declarations is from one of the Sous Chefs named in Stancil's declaration (the only declaration that Anderson put forth besides his own).  Stancil declared that he talked to a Sous Chef named Jaime from Albany, New York who had "the same job" as Stancil and was not paid overtime.  Jaime Hoffman's ("Hoffman") declaration, however, states as follows.

26

> I understand that the individuals who filed this lawsuit included my name in the suit and that they have stated that I am similarly situated, in some respects at least, to those individuals. However, at no point did I consent for my name or experience to be used in this lawsuit in any way. I did travel to the Stamford, CT location to help train employees there, but I do not in any way agree with the claims alleged in this lawsuit. I believe that as a manager, which sous chefs are, it is our responsibility to do whatever it takes to ensure the restaurants are profitable. Indeed, it is my understanding that this accountability is a basis for paying sous chefs higher salaries and expecting them to be able to effectively and independently respond to any problems in the kitchen without supervision.

(Doc # 27-9, Pg ID 433)

One of P.F. Chang's' declarations is from an individual who works as Sous Chef in the same restaurant in Northville, Michigan as Anderson did. Gerry Heim's ("Heim") declaration states that his primary day-to-day job responsibility is managing and being accountable for the daily operations of the kitchen. Heim declares that his duties include preparing schedules, monitoring labor needs, monitoring and ordering food inventory, overseeing the work of kitchen staff, recruiting staff, interviewing applicants, negotiating pay rate with applicants, conducting new hire orientations, disciplining and terminating employees, and recommending employees for raises or promotions. Before Heim became Sous Chef, he was supervised by Plaintiff Anderson for a period of time:

> For about four to six months while I worked as a Pantry Cook, Jeremy Anderson was also employed at the Northville restaurant. During this time, Anderson was a Sous Chef, and therefore was one of my supervisors when we worked the same shifts. I recall that during such shifts, Anderson oversaw the Pantry station at which I worked and

> conducted a nightly review of my station.  Anderson had to approve that all tasks associated with my station were timely and satisfactorily completed before I could end my shift.
>
> I also recall that Anderson reprimanded me once because, in his mind, I took too much time in the bathroom and was not working.  As a result, Anderson instructed me to end my shift for the day.

(Doc # 27-14, Pg ID 464)

The Court finds that Anderson has not met his burden, even under the "fairly lenient" standard, for conditional collective action certification.  Although not dispositive, one factor that the Court considers is that no other plaintiff has opted into this proposed collective action—not even any individual identified in Stancil's declaration.  While Anderson's declaration and Stancil's declaration contain some detail regarding their duties as Sous Chefs, these two declarations are contradicted in part by Anderson's own deposition testimony, Hoffman's declaration, and Heim's declaration.   Although the Court does not engage in credibility determinations at this stage, and although the Court agrees with Anderson that the declarations submitted by P.F. Chang's are of limited evidentiary value at this stage, the Court notes that Anderson has not put forth any other affidavit or declaration describing the duties of any other Sous Chef besides himself and Stancil (an individual who cannot opt into the proposed collective action).  P.F. Chang's' declarations, on the other hand, significantly outnumber Anderson's declarations and contain more detail regarding the declarants' duties as Sous

Chefs. Anderson has also admitted in his deposition testimony that he has no personal knowledge of what any other P.F. Chang's Sous Chefs does.

Under these circumstances, it cannot be said that Anderson has made a modest factual showing sufficient to demonstrate that he and potential plaintiffs together were victims of a widespread, unlawful *de facto* policy or plan of P.F. Chang's.[3]  *See, e.g.*, *Cason*, 2011 WL 1659381, at *2-3; *Lankford v. CWL Invs.,*

---

[3] Anderson fails to cite a case in which any court in our circuit granted conditional certification of a nationwide class based solely on two declarations that are vague as to any other employee's experience. *See, e.g.*, *Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 444, 447 (S.D.N.Y. 2013) (finding, based on two declarations describing kitchen employees' duties at one restaurant location, that the plaintiff had only shown that he and kitchen staff members in that one restaurant location were victims of a common unlawful policy); *Baez v. Ocean One Rest. Grp., LLC*, No. 08-21709-CIV, 2009 WL 712050, at *2 (S.D. Fla. Mar. 17, 2009) (conditionally certifying collective action seeking that notice be sent to one restaurant location based on six declarations); *Casalez v. Mercadito Miami, LLC*, No. 13-22208-CIV, 2014 WL 11881026, at *1-2 (S.D. Fla. Jan. 30, 2014) (denying the defendant's motion for summary judgment in an FLSA action in which the plaintiff did not seek conditional certification of a collective action); *Clark v. Royal Transp. Co.*, No. 15-13243, 2016 WL 2983900, at *3 (E.D. Mich. May 24, 2016) (conditionally certifying collective action of allegedly misclassified shuttle bus drivers based on five affidavits and signed consent forms from nine additional opt-in plaintiffs who all worked out of the same location); *Lee v. Gab Telecom, Inc.*, No. 12-CV-14104, 2013 WL 1632552, at *1-2 (E.D. Mich. Apr. 16, 2013) (conditionally certifying collective action of allegedly misclassified technicians based on affidavits and supplemental affidavits of three former technicians who were named plaintiffs in the action, which had a total of four named plaintiffs who all worked at the same location); *Fisher*, 665 F. Supp. 2d at 826 (conditionally certifying collective action of allegedly misclassified call center employees based on declarations from 67 opt-in plaintiffs and deposition testimony from eight opt-in plaintiffs); *Wlotkowski v. Michigan Bell Tel. Co.*, 267 F.R.D. 213, 214-15 (E.D. Mich. 2010) (conditionally certifying collective action of allegedly misclassified employees in an action with eleven named plaintiffs and 60 opt-in plaintiffs, based on declarations from 35 named and opt-in plaintiffs); *Brown v. Ak Lawncare, Inc.*, No. 14-14158, 2015 WL 5954811, at *4 (E.D. Mich. Oct. 14, 2015) (conditionally certifying collective action, specifically noting that the affidavits and declarations submitted by the three named plaintiffs were equal in number and weight to the ones submitted by the defendants); *Myers v. Marietta Mem'l Hosp.*, 201 F. Supp. 3d 884, 887, 889, 892 (S.D. Ohio 2016) (conditionally certifying collective action based on affidavits from three named plaintiffs in an action with at least one other opt-in plaintiff involving a single worksite); *Lacy v. Reddy Elec. Co.*, No. 3:11-CV-52, 2011 WL 6149842, at *4-5 (S.D. Ohio Dec. 9, 2011) (conditionally certifying collective action

*LLC*, No. 13-CV-14441, 2014 WL 3956184, at \*5-6 (E.D. Mich. Aug. 13, 2014); *Arrington v. Michigan Bell Tel. Co.*, No. 10-10975, 2011 WL 3319691, at \*6 (E.D. Mich. Aug. 1, 2011).  The Court concludes that Anderson has not met his burden of showing that the putative class is similarly situated.   The Court denies Anderson's Motion for Collective Action Certification without prejudice.  *See Shipes*, 2012 WL 995362, at \*12 ("[W]hen courts deny such motions at this stage of the proceedings, the court still may permit discovery to provide plaintiffs a second opportunity to obtain sufficient evidence of a collective to warrant conditional certification and notice to opt in."); *Arrington*, 2011 WL 3319691, at \*6.  Anderson may ask the Court to revisit the issue of conditional certification after additional discovery if appropriate.

## III.   CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Plaintiff Jeremy Anderson's Motion to Dismiss P.F. Chang's Counterclaims (Doc # 14) is GRANTED.

---

based on deposition testimony from two named plaintiffs in an action involving one location); *Penley v. NPC Int'l, Inc.*, No. 13-1031, 2016 WL 7228901, at \*5-8 (W.D. Tenn. Dec. 13, 2016) (conditionally certifying nationwide collective action with two named plaintiffs and 56 opt-in plaintiffs, based on 40 declarations); *Bradford v. Logan's Roadhouse, Inc.*, 137 F. Supp. 3d 1064, 1073, 1078 (M.D. Tenn. 2015) (conditionally certifying nationwide collective action with two named plaintiffs and approximately 100 opt-in plaintiffs, based on approximately 100 declarations); *Smith v. Pizza Hut, Inc.*, No. 09-CV-01632-CMA-BNB, 2012 WL 1414325, at \*1 n.1, 5 (D. Colo. Apr. 21, 2012) (conditionally certifying collective action based on several declarations from opt-in plaintiffs, which were "numerous," and deposition testimony from one of the defendant's executives).

IT IS FURTHER ORDERED that Defendant P.F. Chang's' Counterclaims are DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Plaintiff Jeremy Anderson's Motion for Collective Action Certification (Doc # 17) is DENIED WITHOUT PREJUDICE.


Dated:  August 23, 2017                     s/Denise Page Hood
                                            Chief, U.S. District Court


I hereby certify that a copy of the foregoing document was served upon counsel of record on August 23, 2017, by electronic and/or ordinary mail.

                          s/Julie Owens
                          Acting in the absence of LaShawn Saulsberry
                          Case Manager